UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LUZ RIVERA,

Plaintiff,

v.

GMAC MORTGAGE, JP MORGAN CHASE, PAUL FINANCIAL, LLC, ETS SERVICES, LLC, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., REPUBLIC 2, JOE NGUYEN, MINH DUONG and DOES 1-20, inclusive,

Defendants.
_______________________________/

NO. CIV. S-09-1639 LKK/JFM

O R D E R

This case concerns plaintiff's mortgage and foreclosure thereon. Plaintiff's First Amended Complaint ("FAC") names seven defendants and enumerates eleven causes of action. Defendants GMAC Mortgage ("GMAC"), Mortgage Electronic Registration Systems ("MERS"), and Electronic Registration Systems ("ETS") moved to dismiss all claims against them. Defendant Paul Financial, LLC ("Paul Financial") moved to dismiss all but two claims against it, or alternatively moves for a more definite statement. For the reasons stated below, the motions to dismiss are granted in part. Because plaintiff is granted leave to amend, Paul Financial's

motion for a more definite statement is denied.

**I. BACKGROUND**

Defendants GMAC, MERS, and ETS moved to dismiss on August 24, 2009; defendant Paul Financial moved to dismiss on August 26, 2009. Plaintiff filed oppositions to both motions on September 18, 2009. Paul Financial did not properly attach a declaration upon which it relied in its motion. Accordingly, the court ordered that Paul Financial serve the declaration upon plaintiff and gave plaintiff leave to file an amended opposition. Plaintiff did not amend his opposition to Paul Financial's motion after service of the declaration.

**A. Initial Loan**

Around November 2006, plaintiff alleges that real estate broker defendant, Minh Duong, an employee of defendant Republic 2, solicited plaintiff Luz Rivera to purchase a home loan. Plaintiff's native language is Tagalog, and Duong negotiated her loan primarily in Tagalog. Plaintiff alleges that Duong told her that her mortgage payment would be $1,922, but did not explain to her that her payment would later increase to $4,500. Plaintiff also alleges that Duong falsely inflated her income on her loan application: plaintiff's monthly income at the time of the loan was $4,400, and Duong indicated on her loan application that her income was $16,400. Duong also allegedly advised plaintiff that if her loan became unaffordable, he would refinance it into an affordable loan.

Plaintiff alleges that lender defendant Paul Financial

trained brokers and loan officers, including Duong, and paid them commissions based on the volume of loans they sold to consumers. Further, plaintiff alleges that Paul Financial's loan officers received greater commissions or bonuses for placing borrowers in loans with high yield spread premiums. Consequently, plaintiff alleges that borrowers, including plaintiff, were steered by Paul Financial into loans with unfavorable terms for them and for which they were not qualified.

At closing, plaintiff alleges she was only given a few minutes to sign the loan documents. Further, plaintiff claims she was not provided with translations of the documents or an interpreter. The court assumes that plaintiff could not read English as a reasonable inference from the alleged facts. Additionally, plaintiff alleges that no one explained to her the contents of the documents. Plaintiff also alleges that lender defendant Paul Financial[1] did not provide her with statutorily required disclosures.[2]

---

[1] Plaintiff also alleges that defendant Joe Nguyen, an "agent of the Lender," did not provided plaintiff with disclosures. However, the complaint does not indicate what Nguyen's role was with respect to plaintiff's loan.

[2] Plaintiff also alleges that she was not provided with the statutorily required disclosures under the Truth In Lending Act ("TILA") and the Real Estate Settlement Procedures Act ("RESPA"). Defendant Paul Financial, however, provided TILA and RESPA disclosures signed by the plaintiff as exhibits to the declaration in support of its first motion to dismiss. Nonetheless, Paul Financial has only argued that it provided the required TILA disclosures in its motion. As such, for the purposes of this order, the court assumes that plaintiff was provided only with the

The deed of trust for plaintiff's mortgage lists defendant Mortgage Electronic Registration Systems ("MERS") as nominee for the lender and the lender's successors and assigns. It also indicates that MERS is the beneficiary under the instrument. Paul Financial is listed as the lender.

**B. Foreclosure of Plaintiff's Home Loan**

On or about February 25, 2009, defendant trustee ETS Services, LLC ("ETS") filed a notice of default ("NOD") on plaintiff's loan. At some time between the filing of the deed of trust and the filing of the notice, MERS made ETS trustee of plaintiff's mortgage.

On or about May 18, 2009, plaintiff mailed a Qualified Written Request ("QWR") to loan servicing defendant GMAC Mortgage ("GMAC") and former defendant JP Morgan Chase. Plaintiff alleges that neither party has properly responded to her request.

On or about May 26, 2009, ETS services sent plaintiff a Notice of Trustee Sale. Plaintiff contends that neither MERS nor ETS was in possession of the promissory note for plaintiff's mortgage nor do they have a right to payment under the note. From the face of plaintiff's complaint it is unclear whether plaintiff's mortgage has been foreclosed or whether non-judicial foreclosure proceedings have merely been commenced.

---

required TILA disclosures, and not with the required RESPA disclosures.

Plaintiff filed her first complaint on June 12, 2009, and filed the amended complaint at issue here on August 12, 2009.

**II. STANDARD**

**A. Standard for a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss**

A Fed. R. Civ. P. 12(b)(6) motion challenges a complaint's compliance with the pleading requirements provided by the Federal Rules. In general, these requirements are established by Fed. R. Civ. P. 8, although claims that "sound[] in" fraud or mistake must meet the requirements provided by Fed. R. Civ. P. 9(b). Vess v. Ciba-Geigy Corp., 317 F.3d 1097, 1103-04 (9th Cir. 2003).

**1. Dismissal of Claims Governed by Fed. R. Civ. P. 8**

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must give defendant "fair notice of what the claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (internal quotation and modification omitted).

To meet this requirement, the complaint must be supported by factual allegations. Iqbal, 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth. Id. at 1949-50. Iqbal and Twombly therefore prescribe a two step process for evaluation of motions to dismiss. The court first identifies the non-conclusory factual allegations, and the court then determines whether these allegations, taken as true and

construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief." Id.; Erickson v. Pardus, 551 U.S. 89 (2007).[3]

"Plausibility," as it is used in Twombly and Iqbal, does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 557). A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

The line between non-conclusory and conclusory allegations is not always clear. Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555). While Twombly was not the first

---

[3] As discussed below, the court may consider certain limited evidence on a motion to dismiss. As an exception to the general rule that non-conclusory factual allegations must be accepted as true on a motion to dismiss, the court need not accept allegations as true when they are contradicted by this evidence. See Mullis v. United States Bankr. Ct., 828 F.2d 1385, 1388 (9th Cir. 1987), Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

case that directed the district courts to disregard "conclusory" allegations, the court turns to Iqbal and Twombly for indications of the Supreme Court's current understanding of the term. In Twombly, the Court found the naked allegation that "defendants 'ha[d] entered into a contract, combination or conspiracy to prevent competitive entry . . . and ha[d] agreed not to compete with one another,'" absent any supporting allegation of underlying details, to be a conclusory statement of the elements of an anti-trust claim. Id. at 1950 (quoting Twombly, 550 U.S. at 551). In contrast, the Twombly plaintiffs' allegations of "parallel conduct" were not conclusory, because plaintiffs had alleged specific acts argued to constitute parallel conduct. Twombly, 550 U.S. at 550-51, 556.

Twombly also illustrated the second, "plausibility" step of the analysis by providing an example of a complaint that failed and a complaint that satisfied this step. The complaint at issue in Twombly failed. While the Twombly plaintiffs' allegations regarding parallel conduct were non-conclusory, they failed to support a plausible claim. Id. at 566. Because parallel conduct was said to be ordinarily expected to arise without a prohibited agreement, an allegation of parallel conduct was insufficient to support the inference that a prohibited agreement existed. Id. Absent such an agreement, plaintiffs were not entitled to relief. Id.[4]

---

[4] This judge must confess that it does not appear self-evident that parallel conduct is to be expected in all circumstances and thus would seem to require evidence. Of course, the Supreme Court has spoken and thus this court's own uncertainty needs only be

In contrast, Twombly held that the model pleading for negligence demonstrated the type of pleading that satisfies Rule 8. Id. at 565 n.10. This form provides "On June 1, 1936, in a public highway called Boylston Street in Boston, Massachusetts, defendant negligently drove a motor vehicle against plaintiff who was then crossing said highway." Form 9, Complaint for Negligence, Forms App., Fed. Rules Civ. Proc., 28 U.S.C. App., p 829. These allegations adequately "'state[] . . . circumstances, occurrences, and events in support of the claim presented.'" Twombly, 550 U.S. at 556 n.3 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 94, 95 (3d ed. 2004)). The factual allegations that defendant drove at a certain time and hit plaintiff render plausible the conclusion that defendant drove negligently.

**2. Dismissal of Claims Governed by Fed. R. Civ. P. 9(b)**

A Rule 12(b)(6) motion to dismiss may also challenge a complaint's compliance with Fed. R. Civ. P. 9(b). See Vess, 317 F.3d at 1107. This rule provides that "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." These circumstances include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (quoting Edwards v. Marin Park, Inc., 356 F.3d 1058,

---

noted, but cannot form the basis of a ruling.

1066 (9th Cir. 2004)). "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[] in the alleged fraudulent scheme.'" Id. at 765 (quoting Moore v. Kayport Package Express, 885 F.2d 531, 541 (9th Cir. 1989)). Claims subject to Rule 9(b) must also satisfy the ordinary requirements of Rule 8.

**B. Standard for a Fed. R. Civ. P. 12(e) Motion for More Definite Statement**

"If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed. R. Civ. P. 12(e). "The situations in which a Rule 12(e) motion is appropriate are very limited." 5A Wright and Miller, Federal Practice and Procedure § 1377 (1990). Furthermore, absent special circumstances, a Rule 12(e) motion cannot be used to require the pleader to set forth "the statutory or constitutional basis for his claim, only the facts underlying it." McCalden v. California Library Ass'n, 955 F.2d 1214, 1223 (9th Cir. 1990). However, "even though a complaint is not defective for failure to designate the statute or other provision of law violated, the judge may in his discretion . . . require such detail as may be appropriate in the particular case." McHenry v. Renne, 84 F.3d 1172, 1179 (9th Cir. 1996).

**III. ANALYSIS**

The present motions concern all seven claims against GMAC:

(1) violation of the Rosenthal Fair Debt Collection Procedures Act ("Rosenthal Act"), (2) negligence, (3) violation of Real Estate Settlement Procedures Act ("RESPA"), (4) fraud, (5) violation of Unfair Competition Law ("UCL"), (6) wrongful foreclosure, and (7) violation of Cal. Civ. Code § 1632; all four claims against MERS: (1) negligence, (2) fraud, (3) violation of UCL, and (4) violation of Cal. Civ. Code § 1632; all six claims against ETS: (1) violation of the Rosenthal Act, (2) negligence, (3) fraud, (4) violation of UCL, (5) wrongful foreclosure, and (6) violation of Cal. Civ. Code § 1632; and eight of ten claims against Paul Financial: (1) violation of Truth In Lending Act ("TILA"), (2) negligence, (3) violation of RESPA, (4) breach of fiduciary duty, (5) fraud, (6) violation of UCL, (7) breach of contract, and (8) breach of implied covenant of good faith and fair dealing.

**A. Truth In Lending Act ("TILA")**

**1. Damages**

Plaintiff's TILA claim arises solely out of the alleged failure of Paul Financial to make required disclosures at the time the loan was entered.[5] Specifically, plaintiff alleges that Paul Financial failed to disclose (1) all finance charge details; (2) the annual percentage rate; and (3) the amount

---

[5] Paul Financial also challenges plaintiff's TILA claim for damages on statute of limitations grounds. However, because this claim can be decided on alternate grounds, the court does not address this argument.

financed.[6] FAC ¶ 61. However, Paul Financial has provided copies of the TILA disclosures in which it provided this information containing plaintiff's signature. Exh. C to Decl. of Melanie Frank in Support of Defendant Paul Financial, LLC's July 9, 2009 Motion to Dismiss.[7] Because plaintiff has neither alleged that the information contained in these disclosures was inaccurate nor has she raised any arguments in support of her TILA claim that can survive after Paul Financial's production of the signed TILA disclosures, Paul Financial's motion to dismiss plaintiff's TILA claim for damages is granted with leave to amend.[8]

---

[6] Plaintiff also alleges that Paul Financial failed to provide a notice of her right to rescind the loan. FAC ¶ 60. However, Plaintiff admits in her opposition at page 8 that her loan was a "purchase money loan," and consequently "not subject to rescission under TILA." Accordingly, the court does not consider this allegation.

[7] While Paul Financial frequently cited to this declaration in its August 26, 2009 motion to dismiss plaintiff's amended complaint, it neglected to include it with the motion. As such, plaintiff did not consider the declaration and its exhibits in her opposition. Opposition at 9 n.4 ("[T]he Frank Declaration does not appear to have been filed in support of the instant Motion to Dismiss."). As such, the court granted Plaintiff an opportunity to challenge the authenticity of the exhibits as well as to argue that even if authentic, the documents do not conclusively demonstrate that she is not entitled to relief. Because plaintiff has not amended her opposition in light of the declaration and because the lack of these disclosures is frequently referenced in her complaint, the court considers the declaration and its exhibits as if it were properly filed with the August motion. See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994) (On a motion to dismiss, a court may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.").

[8] There is no question that the disclosures signed by plaintiff were written in English even though plaintiff alleges that her loan was negotiated primarily in Tagalog. While the provision of disclosures in a language lender defendant knew

**2. Rescission**

Paul Financial also moves to dismiss plaintiff's TILA claim for rescission because "TILA's rescission provision does not apply to 'Residential Mortgage transactions,'" including plaintiff's home loan. Plaintiff admits that the rescission provision does not apply to her, and thereby her mortgage is "not subject to rescission under TILA." As such, Paul Financial's motion to dismiss plaintiff's TILA claim for rescission is granted with prejudice.

**B. Rosenthal Fair Debt Collection Practices Act**

California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") prohibits creditors and debt collectors from, among other acts, making false, deceptive, or misleading representations in an effort to collect a debt. Cal. Civ. Code § 1788, et seq. A "debt collector" is "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code §

---

plaintiff did not understand may conflict with the purpose of TILA, 15 U.S.C. § 1601, it appears that doing so does not offend the statute it self. See 15 U.S.C. § 1604(b) ("A creditor or lessor shall be deemed to be in compliance with the disclosure provisions of this subchapter with respect to other than numerical disclosures if the creditor or lessor [¶] uses any appropriate model form or clause as published by the Board," where all published forms are in English, 12 C.F.R. Pt. 226, App. H.). Nonetheless, failure to provide translations of the disclosures may contribute to a claim under state law, as discussed below. See Cal. Civ. Code § 1632(e) ("Provision by a supervised financial organization of a translation of the disclosures required by . . . Regulation Z, . . . . shall also be deemed in compliance with the requirements of" California's translation statute.); see also 12 C.F.R. § 226.27 ("Disclosures required by [Regulation Z] may be made in a language other than English . . . .").

1788.2(c); see also Izenberg v. ETS Services, LLC, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008). Plaintiff alleges that defendants GMAC, ETS, and Paul Financial as well as other non-moving defendants violated the Rosenthal Act, however, only GMAC and ETS moved to dismiss the claim. Plaintiff's allegations that defendant GMAC and ETS violated the Rosenthal Act are the following:

1. GMAC and ETS collected a debt not owed to it. FAC ¶ 71.
2. GMAC and ETS made false reports to credit reporting agencies. Id.
3. GMAC and ETS foreclosed upon a void security interest. Id.
4. GMAC and ETS foreclosed upon a note of which they were not entitled to payment. Id.
5. GMAC and ETS wrongly increased the amount of plaintiff's debt by including amounts not permitted by law or contract. Id.
6. GMAC and ETS falsely stated the amount of plaintiff's debt. Id.
7. GMAC and ETS used unfair and unconscionable means to collect the debt from plaintiff. Id.

As an initial matter, allegations numbers one, three, and four are not relevant to a claim under the Rosenthal Act because they do not describe false, deceptive, or misleading representations. Specifically, allegations of illegality in the

origination of a loan do not constitute representations relating to collection of the debt. Moreover, foreclosure on a property as a security on a debt is not debt collection activity encompassed by the Rosenthal Act. Cal. Civ. Code § 2924(b), Izenberg, 589 F. Supp. 2d at 1199. Allegation number seven is plainly conclusory in that the plaintiff makes no indication as to what the alleged unfair or unconscionable means were. Accordingly, the court cannot consider this allegation when evaluating whether plaintiff stated a claim. Twombly, 550 U.S. 544 (2007).

The court will separately address the remaining allegations because each presents a separate theory of liability. Plaintiff's second allegation is that GMAC and ETS threatened to "mak[e] false reports to credit reporting agencies." FAC ¶ 71. Although the Rosenthal Act does not explicitly prohibit reporting false information to a credit agency, the Act explicitly incorporates federal law, Cal. Civ. Code § 1788.17, and the federal Fair Debt Collection Practices Act prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false," 15 U.S.C. § 1692e(8). This allegation satisfies the general requirements of Rule 8, in that it identifies the circumstances, occurrences, and events of the challenged conduct. Rule 9(b)'s heightened requirements do not apply to this theory of liability, in that this theory does not "sound[] in fraud." Kearns v. Ford Motor Co., 567 F.3d 1120, 1125-26 (9th

Cir. 2009). Plaintiff does not allege that false representations were actually made and relied upon, only that they were threatened. Accordingly, fraud is not the "basis of [the] claim," and Fed. R. Civ. P. 9(b) does not apply. Vess v. Ciba-Geigy Corp., 317 F.3d 1097, 1103-04 (9th Cir. 2003).

Plaintiff further alleges that GMAC and ETS threatened to "increas[e] the amount of a debt by including amounts that are not permitted by law or contract." FAC ¶ 71. Section 1788.13(e) prohibits adding fees that may not be lawfully added. This claim also provides the minimal particularity required by Rule 8.

Finally, plaintiff alleges that GMAC and ETS "threatened to . . . falsely stat[e] the amount of a debt." FAC ¶ 71. As to this allegation, an alleged "threat" is nearly incoherent;[9] Plaintiff apparently means simply that GMAC and ETS falsely stated the debt to her. Because this allegation concerns particular false representations, it sounds in fraud, and is subject to Rule 9(b)'s heightened requirements. While plaintiff has alleged the content of the false representation (the amount of debt) and the identities of the parties to the representation (GMAC, ETS and Paul Financial), she has not alleged the time or place of the representation. Accordingly, plaintiff has not met

[9] As discussed above, threats to falsely state an amount of debt to a credit agency are clearly coherent. Nonetheless, because plaintiff specifically enumerates such threats in paragraph 71, the court will interpret this allegation so as not to be repetitive. Accordingly, the court assumes that the false statements were made to plaintiff, and not threatened to be made to third parties.

the pleading requirements for her claim that GMAC and ETS falsely stated the amount of debt.

Accordingly, some, but not all, of plaintiff's theories of liability under the Rosenthal Act are sufficiently alleged. Defendants' motion is granted in part and denied in part as to plaintiff's Rosenthal Act claim. With respect to the dismissed arguments, plaintiff is granted leave to amend.

**C. Negligence**

**1. Standard**

Plaintiff's claim for negligence is brought as to all defendants. Under California law, the elements of a claim for negligence are "(a) a legal duty to use due care; (b) a breach of such legal duty; and (c) the breach as the proximate or legal cause of the resulting injury." Ladd v. County of San Mateo, 12 Cal. 4th 913, 917 (1996) (internal citations and quotations omitted); see also Cal Civ Code § 1714(a). Moving defendants argue that plaintiff has not adequately alleged facts supporting any of these elements. The court discusses the allegations of negligence as to each defendant separately.

**2. Paul Financial**

**a. Statute of Limitations**

Paul Financial argues that plaintiff's negligence claim should be dismissed because it was not timely filed. Defendant argues that by filing her complaint in June 2009, her negligence claims are barred by the two year statute of limitations under section 339, subdivision 1 of the California Code of Civil

Procedure for negligence in origination of her loan in November 2006. Defendant's contention is inconsistent with the test for the statute of limitations for negligence under this statute. Specifically, the general rule for statute of limitations begins running not when the allegedly negligent act or omission occurred, but rather "when the cause of action is complete with all of its elements." Williams v. Hilb, Rogal & Hobbs Ins. Servs. of Ca., Inc., 177 Cal. App. 4th 624, 641 (Cal. Ct. App. 2009) (quoting Norgart v. Upjohn Co., 21 Cal. 4th 383, 397(1999)). Thus, with respect to negligence claims, the statute of limitations does not run until the plaintiff sustains an injury because "the mere breach of a . . . duty does not suffice to create a cause of action for negligence." Sahadi v. Scheaffer, 155 Cal. App. 4th 704, 715 (Cal Ct. App. 2007) (citing (Budd v. Nixen, 6 Cal. 3d 195, 200 (1971).) Accordingly, the two year statute of limitations only starts to run after both (1) all the elements of the negligence claim are complete and (2) plaintiff knew or should have known of the claim. Norgart, 21 Cal. 4th at 397.

The standard for a motion to dismiss based on a statute of limitations that has run is that it "may be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1206 (9th Cir. 1995). Here, plaintiff alleges that defendants concealed information about her claim. Plaintiff also alleges

that she is not an English speaker, and thereby was unable to read the loan documents. Consequently, plaintiff may require more time to discover any potential negligence claims. Moreover, plaintiff's allegations also support a claim that she did not experience an injury until her loan payments exceeded her ability to pay or even until the initiation of foreclosure proceedings on her home loan. Under the liberal Supermail Cargo standard, plaintiff has stated a claim that either the statute of limitations had not yet run on her negligence claim or that the statute of limitations is tolled.

**b. Lenders' Duty of Care to Borrowers**

The court rejects defendant's argument that a lender never owes a duty of care to a borrower. California courts have stated that, "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." Nymark, 231 Cal. App. 3d at 1096. Applying this rule, the court in Nymark granted summary judgment to the defendant on a claim that the defendant lender had acted negligently in appraising the borrower's collateral to determine if it is adequate security for a loan refinancing the borrower's mortgage, as the court concluded as a matter of law that no duty of care existed with respect to the appraisal. Id. at 1096. See also Wagner v. Benson, 101 Cal. App. 3d 27, 35 (1980) (a lender has no duty to ensure that borrower will use borrowed money wisely).

The court understands Nymark to be limited in two ways. First, a lender may owe a duty of care sounding in negligence to a borrower when the lender's activities exceed those of a conventional lender. The Nymark court noted that the "complaint does not allege, nor does anything in the summary judgment papers indicate, that the appraisal was intended to induce plaintiff to enter into the loan transaction or to assure him that his collateral was sound." Id. at 1096-97. Nymark thereby implied that had such an intent been present, the lender may have had a duty to exercise due care in preparing the appraisal. See also Wagner v. Benson, 101 Cal. App. 3d 27, 35 (1980) ("Liability to a borrower for negligence arises only when the lender actively participates in the financed enterprise beyond the domain of the usual money lender.").

Second, even when a lender's acts are confined to their traditional scope, Nymark announced only a "general" rule. Rather than conclude that no duty existed per se, the Nymark court determined whether a duty existed on the facts of that case by applying the six-factor test established by the California Supreme Court in Biakanja v. Irving 49 Cal. 2d 647, 320 P.2d 16 (1958). Nymark, 231 Cal. App. 3d at 1098; see also Glenn K. Jackson Inc. v. Roe, 273 F.3d 1192, 1197 (9th Cir. 2001). This test balances six non-exhaustive factors:

> [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the

> connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.

Roe, 273 F.3d at 1197 (quoting Biakanja, 49 Cal. 2d at 650) (modification in Roe). Although Biakanja reasoned that this test determines "whether in a specific case the defendant will be held liable to a third person not in privity" with the defendant, 49 Cal. 2d. at 650, Nymark held that this test also determines "whether a financial institution owes a duty of care to a borrower-client," 231 Cal. App. 3d at 1098. Applying these factors to the specific facts in that case, the Nymark court assumed that plaintiff suffered injury, but held that the remaining factors all indicated against finding a duty of care. Id. at 1098-1100.

In Roe, the Ninth Circuit noted that the California Supreme Court "arguably limited" Biakanja in Bily v. Arthur Young & Co., 3 Cal. 4th 370, (1992), which held a court must consider three additional factors before imposing a duty of care. Roe, 273 F.3d at 1198. Roe summarized these factors as "(1) liability may in particular cases be out of proportion to fault; (2) parties should be encouraged to rely on their own ability to protect themselves through their own prudence, diligence and contracting power; and (3) the potential adverse impact on the class of defendants upon whom the duty is imposed." Id. (citing Bily, 3 Cal. 4th at 399-405). Bily was decided before Nymark, but not discussed in the case.

**c. Paul Financial's Allegedly Negligent Acts**

Both limitations to the Nymark rule require the court to consider the particular conduct underlying the negligence claim. Plaintiff alleges three types of wrongful conduct here.[10]

First, plaintiff argues that Paul Financial was negligent in failing to provide the disclosures required by TILA and RESPA. FAC ¶ 78. As explained above, plaintiff has not adequately alleged a failure to provide any disclosure required by TILA. Plaintiff has alleged plausible failures to provide disclosures required by RESPA. Paul Financial had a duty of care with regard to these disclosures. Although the disclosures are undoubtedly within the scope of a lender's normal activities, each of the Biakanja factors support finding a duty of care, and the policy concerns identified in Bily are inapplicable here. Plaintiff has adequately alleged a duty to make accurate RESPA disclosures, a breach of that duty, and damages.[11]

Second, plaintiff argues that Paul Financial was negligent in "directing [plaintiff] into a loan transaction that [he] may not have otherwise qualified for by industry standards, resulting in excessive fees paid by the Plaintiff and payments

---

[10] Although the court engages in this fact-specific analysis, the court is mindful of fact that plaintiff has not provided a single example of a case in which a lender was found to owe a duty of care sounding in negligence to a borrower, nor has the court discovered any such authority under California law.

[11] Paul Financial also included RESPA disclosures as exhibits to the Frank Declaration, but has not argued that these disclosures conclusively show that it did not violate RESPA by failing to provide statutorily required disclosures at closing.

in excess of Plaintiff's ability to pay." FAC ¶ 77. The California Court of Appeal has directly spoken to this issue, holding that a lender "owes no duty of care to the [borrower] in approving [a] loan." Wagner, 101 Cal. App. 3d at 35. Wagner held that as a matter of law, the lender did not owe a duty in negligence not to place borrowers in a loan even where there was a foreseeable risk borrowers would be unable to repay. Id. Wagner's conclusion is consistent with the principles described above. Approving and providing a loan is within the scope of activities conventionally performed by a lender. Under Bily's second factor, borrowers "should be encouraged to rely on their own ability to protect themselves through their own prudence, diligence and contracting power." Roe, 273 F.3d at 1198 (citing Bily, 3 Cal. 4th at 399-405). While borrowers' ability to protect themselves may depend on access to accurate information, a lender's duty to provide that information is distinct from a duty that would prohibit the lender from offering the loan at all.

It follows from the conclusion that a lender does not owe a duty to the borrower in approving the loan that the lender's failure to discover inaccuracies in the loan application regarding borrower's income cannot breach a duty owed to the borrower in negligence, unless these inaccuracies caused a change in the terms of the loan. Plaintiff has alleged no such connection here.

Third, Plaintiff alleges that Paul Financial was negligent in failing to maintain the original promissory note and in "failing to properly create original documents." FAC ¶ 78. Other than the allegations regarding disclosures, plaintiff has not identified any defect in the promissory note, deed of trust, or attached documents. As to preservation of the original promissory note, plaintiff has not alleged facts supporting the conclusion that any failure to maintain this note caused any harm to plaintiff.

Finally, Plaintiff alleges that Paul Financial was negligent when it "took payments to which [it was] not entitled, charged fees [it was] not entitled to charge, and made or otherwise authorized negative reporting of Plaintiff['s] creditworthiness to various credit bureaus." Defendant's duty as to these allegations is limited by the terms of plaintiff's loan.[12] Until the terms of plaintiff's loan are deemed void, Paul Financial's actions to enforce those terms cannot violate any duty. As such, Plaintiff has not alleged a claim for negligence with respect to the collection of payments, charging of fees, or reporting to credit bureaus. For the foregoing reasons, Paul Financial's motion to dismiss plaintiff's negligence claim against it is granted in part and denied in part. With respect

[12] It is difficult to know exactly what plaintiff is claiming, but it does not appear he is claiming the payments and fees were not authorized by the loan.

to the arguments that the court dismisses, plaintiff is granted leave to amend.

**2. As to GMAC**

Plaintiff alleges that GMAC negligently "took payments to which [it was] not entitled, charged fees [it was] not entitled to charge, and made or otherwise authorized negative reporting of Plaintiff['s] creditworthiness to various credit bureaus." FAC ¶¶ 78-79. In short, plaintiff apparently alleges that GMAC negligently failed to properly service her loan because the loan was invalid. While GMAC may have a duty to properly service a loan, it could only breach this duty by servicing a loan it knows to be void. Here, plaintiff makes no allegations that her loan was deemed void prior to or while GMAC serviced it. Rather, plaintiff only now seeks to have the loan deemed void by this court. Thus, plaintiff failed to make a claim for negligence against GMAC, and the claim for negligence against GMAC is dismissed with leave to amend.

**3. As to MERS**

Plaintiff makes two separate claims as to MERS's alleged negligence. The first concerns its failure to maintain the original promissory note. FAC ¶ 78. This court recently considered whether the original promissory note need be maintained by MERS or any other entity seeking non-judicial foreclosure in California. Champlaie v. BAC Home Loans Servicing, LP, 2009 WL 3429622 at *13 (E.D. Cal. October 22, 2009). Essentially, "California Civil Code sections 2924-29241

establish an exhaustive set of requirements for non-judicial foreclosure, and that production of the note is not one of these requirements." Id. Thus, plaintiff has not alleged that the failure to maintain the promissory note caused her any cognizable harm.

The second is that MERS had a duty to only serve an administrative function, as expressed in the terms and conditions of its charter, and that it breached this duty by designating ETS as trustee to execute the foreclosure of her home loan. FAC ¶ 10. The terms and conditions, however, explicitly permit MERS to act as nominee for the beneficial owners of a loan. A nominee is a type of agent of the beneficiary (see "Nominee," Black's Law Dictionary (8th ed. 2004)), and the terms and conditions quoted in plaintiff's complaint do not restrict the actions of MERS as nominee on behalf of the beneficiary. Specifically, these terms do not prohibit MERS from substituting another entity as trustee to foreclose the loan. Furthermore, plaintiff has alleged no facts to support the claim that as a nominee, MERS could not properly substitute ETS as a trustee. Accordingly, plaintiff failed to make a claim that MERS was negligent in making ETS the trustee or in commencing foreclosure proceedings. Thus, plaintiff has not alleged a cause of action for negligence against MERS, and this claim is dismissed with leave to amend.

**4. As to ETS**

The general thrust of plaintiff's negligence claim against ETS is that ETS violated a duty to plaintiff by instituting foreclosure proceedings on plaintiff's loan while wrongly serving as trustee. As discussed above, plaintiff has not provided facts to support a claim that MERS improperly designated ETS as trustee. Thus, the only remaining theory of liability is that ETS "breached its duties set forth under California's non-judicial foreclosure scheme, when it failed to re-notice the Plaintiff regarding an upcoming trustee's sale." Opposition at 12. This argument, however, is not a viable theory of recovery under California law. A trustee's actions in executing a non-judicial foreclosure are protected by California's litigation privilege, and as such will not support a tort claim other than malicious prosecution. Cal Civ. Code §§ 47, 2924(d), Kachlon v. Markowitz, 168 Cal. App. 4th 316, 333 (2008); see also Bouyer v. Countrywide Bank, FSB, 2009 U.S. Dist. LEXIS 53940 (N.D. Cal. June 25, 2009). ETS's motion to dismiss the negligence claim against it is granted with leave to amend.

**D. Real Estate Settlement Procedures Act ("RESPA")**

**1. As to Paul Financial**

Paul Financial argues that plaintiff's claim against it for violation of RESPA should be dismissed for two reasons. First, defendant argues that plaintiff failed to allege facts

supporting her claim that it violated RESPA. However, plaintiff did allege facts supporting her claim. Plaintiff alleged that Paul Financial "failed to correctly and accurately comply with disclosure requirements" at the time of closing of the sale of plaintiff's property. FAC ¶ 85. Defendant continues to argue that plaintiff needed to identify what specifically it failed to disclose or inaccurately disclose in order to meet the pleadings requirements under Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). While plaintiff's allegation is not detailed, neither is it conclusory. Plaintiff does not merely state that Paul Financial violated RESPA, but rather that Paul Financial failed to comply with RESPA's disclosure requirements. Such an allegation put Paul Financial on notice of what plaintiff's claim is and the grounds upon which it rests, i.e., plaintiff claims that Paul Financial violated RESPA by failing to make disclosures required by the statute at the closing of plaintiff's home loan. Plaintiff has alleged sufficient facts to support her claim against Paul Financial.

Defendant's second argument is that a plaintiff alleging a violation of RESPA must allege damages to state a claim under the statute. 12 U.S.C. § 2605(f)(1)(A).[13] Because plaintiff failed to allege damages, Paul Financial argues, the claim

[13] RESPA allows for a plaintiff to recover damages of up to $1000 "in the case of a pattern or practice of noncompliance" with the statute. Plaintiff alleges such a pattern or practice in paragraph 87 of her complaint. The court makes no decision as to whether plaintiff's allegation should not be considered under Twombly because defendants have not raised any arguments concerning the allegation.

should be dismissed. Defendant's argument fails because plaintiff has alleged that she has suffered damages because of defendant's violation of RESPA. FAC ¶ 88 ("As a result of Defendants' failure to comply with RESPA, Plaintiff has suffered and continues to suffer damages and costs of suit."). Accordingly, Paul Financial's motion to dismiss plaintiff's RESPA claim is denied.[14]

**2. As to GMAC**

GMAC makes three arguments supporting its motion to dismiss plaintiff's RESPA claim. The court rejects all three arguments. First, GMAC refers to what appears to be a typographical error in plaintiff's complaint. Specifically, in plaintiff's general allegations, Rivera alleges that she sent QWRs to both JP Morgan and GMAC, however Rivera only alleges that JP Morgan has yet to properly respond to the request. FAC ¶ 34. Under her cause of action for violation of RESPA, however, plaintiff clearly alleges that both GMAC and JP Morgan "fail[ed] and refus[ed] to provide a proper written explanation or response to Plaintiff's QWR." While plaintiff's omission of GMAC's failure to respond to the QWR in her general allegations may not be ideal, it does not fail to put GMAC on notice of the grounds on which plaintiff bases her claim. Thus, GMAC's argument does not support dismissal of the RESPA claim against it.

---

[14] This court draws no conclusion as to whether the disclosures contained in Exhibit C to the Frank declaration would establish that plaintiff has failed to state a claim because defendant has not raised the argument.

Second, GMAC argues that it had no duty to provide disclosures at the closing of plaintiff's loan because it was not the original lender. This argument has no merit because plaintiff does not allege that GMAC failed to make disclosures at closing. Rather, plaintiff alleges that GMAC violated RESPA by failing to timely provide plaintiff with notice that it obtained servicing rights, FAC ¶ 84, and failing to properly respond to plaintiff's QWR, id. at ¶ 87.

Lastly, GMAC argues that there is no private right of action under sections 2603 and 2604 of RESPA. However, plaintiff's claim arises under section 2605, and as described above, such a claim provides for individual recovery. See 12 U.S.C. 2605(f). GMAC's motion to dismiss is denied.

**E. Breach of Fiduciary Duty**

Plaintiff brings a claim for breach of fiduciary duty against defendants Minh Duong, Joe Nguyen, Republic 2, and Paul Financial. The former three defendants are not directly at issue in this motion. The court dismisses this claim as to Paul Financial, because plaintiff has not alleged facts supporting the conclusion that Paul Financial owed plaintiff a fiduciary duty, nor has plaintiff provided a legal theory under which Paul Financial may be liable under the brokers' fiduciary duties.

In general, a lender does not owe a fiduciary duty to a borrower. "A commercial lender is entitled to pursue its own economic interests in a loan transaction. This right is inconsistent with the obligations of a fiduciary which require

that the fiduciary knowingly agree to subordinate its interests to act on behalf of and for the benefit of another." Nymark v. Heart Fed. Savings & Loan Assn., 231 Cal. App. 3d 1089, 1093 n.1 (1991). "[A]bsent special circumstances . . . a loan transaction is at arm's length and there is no fiduciary relationship between the borrower and lender." Oaks Management Corporation v. Superior Court, 145 Cal. App. 4th 453, 466 (2006) (collecting cases).

Plaintiff argues that because of Paul Financial's influence upon plaintiff's brokers, Republic 2, Joe Nguyen, and Minh Duong, Paul Financial is subject to the fiduciary duty a broker owes to the client. Paul Financial's influence allegedly consisted of commissions paid to the brokers based on the volume and profitability (for Paul Financial) of the loans brokers sold as well as "train[ing], direct[ion], [and] authoriz[ation]," although plaintiff has not explained the sense in which Paul Financial directed or authorized the broker's conduct. FAC ¶¶ 22, 36, 92. The case relied upon by plaintiff, Wyatt v. Union Mortg. Co., held that "*[d]irectors and officers of a corporation* . . . may become liable [for a corporation's torts] if they directly ordered, authorized or participated in the tortious conduct." Wyatt v. Union Mortg. Co., 24 Cal. 3d 773, 785 (1979) (emphasis added). Neither Wyatt nor the authorities cited therein suggests that this rule imposes liability outside the relationship between a corporation and its officers.

Plaintiff also argues that Paul Financial may be

vicariously liable under employer/employee, agency, and conspiracy theories.[15] The factual allegations do not support employee or agency theories. As to master/servant relationships, the "primary factor" in whether the purported employer exercises control over the purported employee. See Metropolitan Water Dist. v. Superior Court, 32 Cal. 4th 491, 512 (2004) (following the Restatement Second of Agency (1958), § 220). Plaintiff has not alleged facts indicating that Paul Financial exercised the requisite control over the brokers' activities. Other factors courts may consider in this analysis are not relevant here. See Tieberg v. Unemployment Ins. Appeals Board, 2 Cal. 3d 943, 950 (1970) (quoting Restatement of Agency, Second § 220(2)(b)-(j)).

As to agency, an agency relationship exists where a principal authorizes an agent to represent and bind the principal. Cal. Civ. Code § 2295. Here, although plaintiff has alleged that Paul Financial offered the brokers incentives to act in ways that furthered Paul Financial's interests, there is no allegation indicating that Paul Financial gave the brokers authority to represent or bind it, or that Paul Financial took some action that would have given plaintiff the impression that such a relationship existed. Cal. Civ. Code §§ 2299, 2300; J.L.

---

[15] Because the court concludes that each of these theories fails, the court does not address the relationship between these theories and the reasoning in Wyatt. See Doctors' Co. v. Superior Court, 49 Cal. 3d 39, 48 (1989) (citing Wyatt v. Union Mortgage Co., 24 Cal. 3d at 785).

v. Children's Institute, Inc., 177 Cal. App. 4th 388, 403-404 (2009). Therefore, plaintiff's allegations do not support a finding of either actual or ostensible agency.

Turning finally to conspiracy, Paul Financial may not be liable for conspiracy to breach a fiduciary duty. Under California law, a party may be vicariously liable for another's tort in a civil conspiracy where the plaintiff shows "(1) formation and operation of the conspiracy and (2) damage resulting to plaintiff (3) from a wrongful act done in furtherance of the common design." Rusheen v. Cohen, 37 Cal. 4th 1048, 1062 (2006) (citing Doctors' Co. v. Superior Court, 49 Cal.3d 39, 44 (1989)), see also Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 511 (1994).[16] The California Supreme Court has held that even when these elements are shown, however, a conspirator cannot be liable unless he personally owed the duty that was breached. Applied Equipment, 7 Cal. 4th at 511, 514. Civil conspiracy "cannot create a duty . . . . [i]t allows tort recovery only against a party who already owes the duty." Id. at 511. Allied Equipment has thus sharply limited the scope of civil conspiracy liability. Numerous California cases have cited Applied Equipment to hold that civil conspiracy liability could not be imposed, and this court is

---

[16] Rusheen stated in passing that these were "[t]he elements of an action for civil conspiracy." 37 Cal. 4th at 1062. In cases more directly considering civil conspiracy liability, however, the California Supreme Court has explained that "Conspiracy is not a cause of action." Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 510 (1994).

aware of only two post-Applied Equipment cases imposing civil conspiracy liability. Kesmodel v. Rand, 119 Cal. App. 4th 1128, 1133, 1141 (2004), Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone, 107 Cal. App. 4th 54, 84 (2003). These cases involved generally-applicable tort duties, respectively, the duty not to falsely arrest, and the duty not to engage in affirmative fraud. In contrast, courts have specifically held that civil conspiracy cannot impose liability for breach of fiduciary duty on a party that does not already owe such a duty. Everest Investors 8 v. Whitehall Real Estate Ltd. Partnership XI, 100 Cal. App. 4th 1102, 1107 (2002) (citing Doctors' Co., 49 Cal. 3d at 41-42, 44 and Allied Equipment, 7 Cal. 4th at 510-512). Thus, civil conspiracy allows imposition of vicarious liability on a party who owes a tort duty, but who did not personally breach that duty. Doctors' Co., 49 Cal. 3d at 44 (A party may be liable "irrespective of whether or not he was a direct actor and regardless of the degree of his activity."); see also Kesmodel, 119 Cal. App. 4th at 1141 (illustrating application of this rule).

The California Supreme Court's holdings appear to compel the conclusion that in this case, however, where Paul Financial is alleged to have induced another, a broker, to engage in a joint scheme that will breach the broker's fiduciary duty, it may not be liable under an independent civil conspiracy claim nor under a claim for civil conspiracy to commit breach of fiduciary duty. Applied Equipment, 7 Cal. 4th at 511, 514.

Whatever the wisdom of this rule, the court is bound by the California Supreme Court's holdings on this issue. It may be that Paul Financial is liable, on some other theory, for interfering with the fiduciary duty owed to plaintiff by plaintiff's mortgage brokers. The court declines to speculate on what such a claim would entail, or its likelihood of success. Associated General Contractors of California, 459 U.S. at 526. In the present complaint, the purported interference identified by plaintiff is insufficient to give rise to a fiduciary duty running from the lender to the borrower. Oaks Management, 145 Cal. App. 4th at 466. Absent such a duty, plaintiff's claim for breach of fiduciary duty must be dismissed as to Paul Financial.

**F. Fraud**

Plaintiff brings a claim for fraud as to all defendants. The elements of a claim for intentional misrepresentation under California law are (1) misrepresentation (a false representation, concealment or nondisclosure), (2) knowledge of falsity, (3) intent to defraud (to induce reliance), (4) justifiable reliance, and (5) resulting damage. Agosta v. Astor, 120 Cal. App. 4th 596, 603 (2004). Claims for fraud are subject to a heightened pleading requirement under Fed. R. Civ. P. 9(b), as discussed above.

The FAC's allegations in support of the claim for fraud are that:

> Defendants, and each of them, have made several representations to Plaintiff with regard to material facts. [¶] These material

> representations made by Defendants were false. [¶] Defendants knew that these material representations were false when made, or these material representations were made with reckless disregard for the truth. [¶] Defendants intended that Plaintiff rely on these material representations. [¶] Plaintiff reasonably relied on said representations. [¶] As a result of Plaintiff['s] reliance, she was harmed and suffered damages.

FAC ¶¶ 101-106. These allegations are the paragon of conclusory allegations, and they fail to meet the specificity required by Fed. R. Civ. P. 9(b). They refer to no specific conduct, and give defendants absolutely no indication as to what conduct, if any, underlies the fraud claims.

Without attempting to defend the general allegations quoted above, plaintiff contends that the claim nonetheless satisfies Rule 9(b) because it incorporates by reference all other allegations in the complaint. None of these allegations specifically identify any misrepresentation by the parties to this motion. Further, plaintiff argues in her opposition that moving defendants are somehow vicariously liable to the alleged misrepresentations made by real estate broker defendants Nguyen and Duong. Plaintiff, however, fails to provide any legal theory to support such liability based upon the facts alleged in her complaint. As such, plaintiff has not stated a claim for vicarious liability of any defendants. Plaintiff's incorporation of allegations by reference fails to provide the notice required by Rule 9, and plaintiff's fraud claim is dismissed. Accordingly, defendants' motion to dismiss the fraud claim is

granted as to defendants Paul Financial, GMAC, MERS, and ETS with leave to amend.

**G. Breach of Contract**

Plaintiff brings a claim for breach of contract against Paul Financial to which defendant moves to dismiss. A cause of action for breach of contract includes four elements: that a contract exists between the parties, that the plaintiff performed his contractual duties or was excused from nonperformance, that the defendant breached those contractual duties, and that plaintiff's damages were a result of the breach. Reichert v. General Ins. Co., 68 Cal. 2d 822, 830 (1968); First Commercial Mortgage Co. v. Reece, 89 Cal. App. 4th 731, 745 (2001).

In her opposition, plaintiff identifies the promissory note as the contract at issue. Plaintiff alleges that Paul Financial violated this contract by failing to comply with language indicating that her payment would be $1,922. Paul Financial included the note as an exhibit to the Frank declaration. This document clearly indicates that Paul Financial did not breach the contract by charging plaintiff a payment other than $1,922. For example, plaintiff's adjustable rate note states that, "The interest rate I will pay may change." This documents makes plaintiff's claim for breach of contract untenable.

Plaintiff also argues that Paul Financial should be liable to the oral promises made by the broker before they entered the written contracts. It is not clear from plaintiff's opposition

or from her complaint whether she is attempting to argue that the oral promises should be integrated into the note or if the oral promises constitute a separate contract under which Paul Financial is vicariously liable. Because the court cannot ascertain the nature or the basis of plaintiff's second argument of liability, the court dismisses plaintiff's claim for breach of contract with leave to amend.

**H. Breach of Good Faith and Fair Dealing**

Plaintiff brings a claim for breach of the implied covenant of good faith and fair dealing against Paul Financial and other nonmoving defendants. Such a claim is predicated upon the existence of an underlying contract. Plaintiff has alleged two contracts with Paul Financial: the deed of trust and promissory note. Turning to Paul Financial's alleged breach of the implied covenant, as with many of plaintiff's claims, the factual allegations underlying the good faith claim are largely conclusory.[17]

In her opposition, plaintiff argues that the good faith claim is based on "Paul Fiancial [having] placed Plaintiff into a toxic loan with predatory terms." However, because a claim for breach of the duty good faith is a claim that a defendant deprived plaintiff of benefits reasonably expected by the

---

[17] For example, plaintiff alleges that defendants violated the duty of good faith by "performing the acts and failures to act alleged herein, and by failing to perform the duties specifically enumerated herein," FAC ¶ 122, and by "failing to comply with all applicable laws, including notice requirements, before foreclosure," FAC ¶ 123.

parties under the contract, entry into the contract itself cannot constitute a violation of the duty of good faith.

Accordingly, plaintiff's claim against Paul Financial for breach of the implied covenant of good faith and fair dealing is dismissed with leave to amend.

**I. Wrongful Foreclosure**

Finally, plaintiff brings a claim for wrongful foreclosure, as to GMAC and ETS. Plaintiff has failed to allege a violation of any of the requirements for a non-judicial foreclosure.[18] Specifically, plaintiff argues that the foreclosure of her home loan violated these requirements because (1) defendants are statutorily required to produce the note to foreclose, or alternatively, (2) defendants are required to proffer proof of ownership of the note to foreclose, and (3) defendants lacked the authority to foreclose. With respect to plaintiff's first argument, California's non-judicial foreclosure process, Cal. Civ. Code §§ 2924-29241, establishes an exhaustive set of requirements for non-judicial foreclosure, and the production of the note is not one of these requirements. Champlaie, 2009 WL 3429622 at *13. Similarly, with respect to plaintiff's second argument, under Cal. Civ. Code § 2932.5, the Ninth Circuit has applied California law to hold that promissory notes and deeds

[18] Defendants also argue that plaintiff's claim should be dismissed for failure to offer tender. The court does not consider this argument because it dismisses plaintiff's wrongful foreclosure claim on the grounds that plaintiff has not raised any arguments to support a claim that the foreclosure of her home loan was wrongful.

of trust arising out of real estate loans could be sold without transfer of possession of the documents themselves. In re Golden Plan of Cal., Inc., 829 F.2d 705, 708 n.2, 710 (9th Cir. 1986). Accordingly, possession of the promissory note is not a prerequisite to non-judicial foreclosure in that a party may validly own a beneficial interest in a promissory note or deed of trust without possession of the promissory note itself. Champlaie, 2009 WL 349622 at *13-14. Consequently, defendants need not offer proof of possession of the note to legally institute non-judicial foreclosure proceedings against plaintiff, although, of course, they must prove that they have the right to foreclose. Lastly, as described above, plaintiffs have not alleged any facts to support a claim that defendants did not possess the right to foreclose plaintiff's loan. Specifically, plaintiff has not alleged that her loan was deemed void or invalid, but rather has raised numerous arguments that her loan is voidable. Thus, this claim is dismissed with leave to amend.

**J. Contract Rescission under Cal. Civ. Code § 1632**

Plaintiff alleges a claim for violation of Cal. Civ. Code § 1632 against all moving defendants, yet only defendants GMAC, MERS, and ETS have moved to dismiss this cause of action. This section requires "any person engaged in a trade or business who negotiates primarily in . . . Tagalog . . . , orally or in writing, in the course of entering [several types of contracts to] deliver to the other party to the contract or agreement and

prior to the execution thereof, a translation of the contract or agreement in the language in which the contract or agreement was negotiated." Cal. Civ. Code. § 1632(b). Plaintiff has alleged that "her native language is Tagalog," FAC ¶ 25, and that her "[N]egotiations were translated into Tagalog[,] but no documents were provided to Plaintiff[] translated into Tagalog." GMAC, MERS, and ETS move to dismiss this claim against them for two separate reasons. Defendants argue that no written translation was necessary because the mortgage broker verbally translated the negotiations for plaintiff and was plaintiff's agent. Alternatively, defendants argue that they cannot be liable under the statute because they did not negotiate anything with the plaintiff.[19]

First, plaintiff correctly argues that the exception to § 1632's provisions in subsection (h) does not apply in this case. Specifically, subsection (h) only applies where "the party negotiates the terms of the contract . . . through his or her own interpreter." Defendants argue that the real estate broker was plaintiff's "own interpreter" in that the real estate broker is the agent of the borrower. Such an argument contravenes the purpose of the statute in that it specifically seeks to protect borrowers from being subject to loans negotiated with a real

---

[19] Defendants also argue that the claim should be dismissed because it fails to name any defendants. While the claim could have more clearly identified how each defendant is liable under the statute, the cause of action sufficiently puts defendants on notice that plaintiff seeks to hold them liable in that it names "Defendants' wrongful actions." This is sufficient.

estate broker primarily in Tagalog, who nonetheless fails to provide written translations of the loan. See Cal. Civ. Code § 1632(b)(4); Cal. Bus. & Prof. Code § 10240. As such, the fact that the real estate broker was plaintiff's agent does not overcome the requirement that he provide translations of plaintiff's loan into Tagalog because the real estate broker could not feasibly be considered plaintiff's own interpreter under the terms of the statute.

With respect to defendants' second argument, plaintiff argues that defendants are vicariously liable for the actions of the broker. Vicarious liability, however, is not an issue for liability under § 1632. Rather § 1632 provides for rescission of a contract for failure to comply with its provisions. The statute applies to certain real estate loans secured by real property that are negotiated exclusively by a real estate broker, Cal. Civ. Code § 1632(b)(4); Cal. Bus. & Prof. Code § 10240. It also provides a procedure for recovery against a financial institution:

> When the contract for a consumer credit sale or consumer lease, which has been sold and assigned to a financial institution is rescinded pursuant to this subdivision, the consumer shall make restitution to and have restitution made by the person with whom he or she made the contract, and shall give notice of rescission to the assignee. Notwithstanding that the contract was assigned without recourse, the assignment shall be deemed rescinded and the assignor shall promptly repurchase the contract from the assignee.
>
> Cal. Civ. Code § 1632(k).

This procedure only applies, however, if plaintiff's home loan

is a consumer credit sale. The statute is silent as to the meaning of this term. The California Supreme Court has defined a credit sale secured by real property in contrast to loan secured by real property. Specifically, it defines a credit sale as "when property is sold on credit as an advance over the cash price. In these circumstances, the seller finances the purchase of property by extending payments over time and charging a higher price for carrying the financing." Ghirardo v. Antonioli, 8 Cal. 4th 791, 803 (1994) (internal quotations omitted). If plaintiff's loan were a credit sale, defendants would not properly be liable under the statute according to § 1632(k) because the provision would only allow plaintiff to bring a claim against the original seller, who would in turn provide restitution to any assignees of the credit sale. Here, plaintiff does not allege that her mortgage is a credit sale as defined in Ghirardo nor does defendant raise any arguments to suggest that her home loan was actually a credit sale. Consequently, the procedure set forth in § 1632(k) with respect to the assignment of credit sale loans is not applicable, and the court relies upon common law consequences of contract rescission for assignees of plaintiff's home loan.

California courts have held that "[a]n assignment carries with it all the rights of the assignor. . . . The assignee 'stands in the shoes' of the assignor, taking [its] rights and remedies, subject to any defenses which the obligor has against the assignor prior to notice of the assignment. . . ." Johnson

v. County of Fresno, 111 Cal. App. 4th 1087, 1096 (Cal. Ct. App. 2003); see also Casa Eva I Homeowners Ass'n v. Ani Const. & Tile, Inc., 134 Cal. App. 4th 771, 783 (Cal. Ct. App. 2005). Section 1632(k) provides that, "Upon a failure to comply with the provisions of this section, the person aggrieved may rescind the contract or agreement." Because plaintiff has alleged that the negotiations of her home loan did not comply with § 1632, and because under California law the assignee of the loan is subject to any defenses which plaintiff had against her real estate broker and original lender at the time of loan origination, plaintiff has stated a claim against assignee defendants GMAC, MERS, and ETS for violation of § 1632. Thus, defendants' motion to dismiss plaintiffs § 1632 claim is denied.

**K. Unfair Competition Law**

California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, proscribes "unlawful, unfair or fraudulent" business acts and practices. Plaintiff's sole allegation specifying the conduct underlying the UCL claim alleges that "Plaintiff is informed and believes that Defendants['] acts as alleged herein constitute unlawful, unfair, and/or fraudulent business practices, as defined in the California Business and Professions Code § 17200 et seq." FAC ¶ 110. Thus, as with the fraud claim, plaintiff's UCL claim merely alleges the barest elements of an UCL claim, and directs defendants to scour the remainder of the complaint to determine which, if any, allegations incorporated by reference plaintiff intend as the

basis for this claim.

The incorporated allegations fail to state a UCL claim based on fraudulent or unfair business practices. As to fraud, Fed. R. Civ. P. 9(b) applies to UCL claims sounding in fraud, and plaintiff has failed to meet this standard. As to unfair business practices, plaintiff fails to provide defendants with any notice as to which acts, if any, defendants are alleged to have done which constitute such practices.

Plaintiff's UCL claim must therefore proceed, if at all, on the theory that defendants acted unlawfully. As discussed above, plaintiff has adequately alleged unlawful acts in that Paul Financial, GMAC, and ETS violated the Rosenthal Act; Paul Financial negligently failed to make RESPA disclosures; Paul Financial and GMAC violated RESPA; and all moving defendants violated Cal. Civ. Code § 1632. These allegations identify predicate acts supporting a UCL claim.

Plaintiff also raises in her opposition that MERS acted unlawfully by failing to register as a foreign corporation as required under Cal. Corp. Code § 2105(a). The only fact plaintiff cites to concerning this claim is the description of MERS in the parties section of her complaint: "MERS was not registered to do business in California." Aside from a general statement that "Plaintiff incorporates here each and every allegation set forth above," plaintiff makes no reference to this fact in her cause of action under UCL nor does she anywhere in her complaint indicate that MERS's failure to register in

some fashion injured her. Accordingly, the allegation of MERS's not being registered alone does not put MERS on notice to the nature of plaintiff's UCL claim. As such, plaintiff has not stated a claim in her complaint that MERS violated § 2105(a).

Defendants' motions to dismiss are therefore granted with leave to amend as to the UCL claim insofar as the claim is predicated upon these acts, and granted otherwise.

**L. Motion for a More Definite Statement**

In the alternative, Paul Financial has moved for a more definite statement under Fed. R. Civ. P 12(e). This motion is denied in that this court has granted plaintiff leave to amend her complaint.

## IV. CONCLUSION

For the reasons stated above, the court GRANTS IN PART Defendants' motion to dismiss the Complaint, Doc. Nos. 20, 22.

The court DISMISSES WITHOUT PREJUDICE the following claims:

1. First Claim, for damages under TILA, as to defendant Paul Financial.
2. Third Claim, for negligence, as to defendants GMAC, MERS, and ETS.
3. Fifth Claim, for breach of fiduciary duty, as to defendant Paul Financial.
4. Sixth Claim, for fraud, as to defendants Paul Financial, GMAC, MERS, and ETS.
5. Eighth Claim, for breach of contract, as to defendant Paul Financial.

6. Ninth Claim, for breach of the implied covenant of good faith and fair dealing, as to defendant Paul Financial.

7. Tenth Claim, for wrongful foreclosure, as to defendants GMAC and ETS.

The court DISMISSES WITH PREJUDICE the following claim:

1. First Claim, for rescission under TILA, as to defendant Paul Financial.

The court DENIES defendants' motions to dismiss, Doc. Nos. 20, 22, as to the following claims, insofar as they are premised on the theories found adequate in the analysis above:

1. Second Claim, under the Rosenthal Act, as to defendants GMAC and ETS.

2. Third Claim, for negligence, as to defendant Paul Financial.

3. Fourth Claim, under RESPA, as to defendants Paul Financial and GMAC.

4. Seventh Claim, under UCL, as to defendants Paul Financial, GMAC, MERS, and ETS.

5. Eleventh Claim, under Cal. Civ. Code § 1632, as to defendants GMAC, MERS, and ETS.

The court DENIES Paul Financial's motion for a more definite statement.

The court further orders that plaintiff is granted twenty days from the date of the issuance of this order in which to file an amended complaint as to all dismissed claims except for

rescission under TILA.

IT IS SO ORDERED.

DATED: January 8, 2010.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT